{¶ 25} I concur with the decision of the majority as to Wurzauf s failure to establish a retaliatory claim under R.C. 4123.90. However, I believe the decision of the majority as to Wurzauf s public policy claim of wrongful discharge is not consistent with the decision of the Supreme Court of Ohio in Coolidge v. Riverdale Local School District,supra. [3] Accordingly, I respectfully dissent. *Page 11 
 {¶ 26} It is undisputed in this case that as an employee receiving TTD workers compensation benefits for a work related injury, Wurzauf is by definition unable to attend work and thus, could not have been lawfully discharged solely for his absenteeism from that work under theCoolidge decision. Id. at 149-150. The question posed by this case is whether Wurzauf can nevertheless be lawfully discharged from hisemployment during his period of TTD disability based solely upon his absenteeism from a supplemental program mandated by the employer. [4]
 {¶ 27} The majority essentially maintains that the precise holding ofCoolidge only protects Wurzauf from being fired for absenteeism from his job; that Wurzauf was not fired for absenteeism from his job but for failure to participate in the MIT program — specifically the failure to submit to the employer's independent medical screening for the program; and that this failure to participate therefore constitutes an independent business justification for firing Wurzauf, completely outside the Coolidge holding. *Page 12 
 {¶ 28} However, in my view, such a narrow reading of theCoolidge holding is at odds with the public policy which the Supreme Court of Ohio embraced in order to arrive at the holding. The following passages from Coolidge seem instructive:
 "[w]e agree with the minority of courts that employees who are temporarily and totally disabled as a result of their work related injuries have a right not only to the compensation provided in the act, but also to whatever period of absence from work is deemed medically necessary to complete their recovery or stabilize their injuries. * * * A temporarily and totally disabled employee is by definition physically unable to perform the duties of his or her former position of employment." Id. at 149-150.
 {¶ 29} And in specifically addressing whether an injured employee might be indirectly terminated not for absenteeism per se but for failure to "cooperate" with the employer in matters related to the workers compensation claim, the Supreme Court of Ohio states:
 "[t]here appears to be some concern on the part of the Court of Appeals that Coolidge did not fully cooperate with her employer. In particular, the Court of Appeals mentions that 'Coolidge never applied for uncompensated leave as contemplated by the Board's policies' and failed to respond to 'phone calls * * * made by the superintendent in order to determine her plans for the 1999-2000 school year.'
 This seems to suggest that appellee may have independent grounds for discharging Coolidge on the basis that she failed to submit requests for leave of absence or provide notice of her ongoing status or condition." Id. at 150-151. *Page 13 
 {¶ 30} Notably, the Supreme Court of Ohio specifically cautioned against this approach:
 "[a]n employee who is receiving TTD compensation may not be discharged for failing to complete forms required for a leave of absence, or for failing to notify his or her employer as to the length of the absence, where the employer is otherwise on notice of the employee's condition and status. * * * It would be patently illogical to hold that a temporarily and totally disabled employee does not need the employer's permission to be absent from work, only then to turn around and allow the employee to be fired for failing to ask for such permission.
 Of course, we do not excuse or condone the actions of an absent employee who refuses to answer his or her employer's requests for relevant information regarding the employee's condition or work status. Nor do we suggest that a temporarily and totally disabled employee may ignore with impunity his or her employer's reasonable inquiries into the cause or length of an absence.
 But nor will we permit an employer to circumvent today's holding by couching an absenteeism-based discharge in terms of noncooperation and simply discounting its own knowledge of the facts." Id. at 151-152. (Emphasis added.)
 {¶ 31} Based on the record in the present case it seems apparent that Honda's MIT program is a legitimate program with admirable goals, and was established long before the Coolidge decision. Moreover, there is no indication that the program was disingenuously utilized as a means of intentionally circumventing the Coolidge doctrine. Nevertheless, Wurzauf was not fired from the MIT program for failing to attend the program; he was fired from his job for failing to attend the program. *Page 14 
 {¶ 32} In these circumstances, I fail to see the difference between the extraneous "failure to cooperate" rejected as an independent cause for termination in the Coolidge case and Wurzauf's "failure to cooperate" by not participating in an extraneous program which the employer chose to make "mandatory" on its own terms. Notwithstanding the apparent good intentions of the MIT program in this case, allowing Honda to fire a TTD employee for absenteeism from this program-particularly prior to clearly establishing through the workers compensation system, his medical ability to participate — effectively subverts the public policy announced in Coolidge and will likely facilitate a more deliberate circumvention of the Coolidge holding by others in the future.
 {¶ 33} I would affirm the trial court's judgment upon the R.C. 4123.90
claim but I would reverse that portion of the trial court's judgment which declared that Wurzauf s discharge for failure to participate in the MIT program did not violate public policy.
[3] As noted by the majority, the public policy claim for wrongful discharge in this case was not initially alleged in the complaint, but instead was raised in a trial brief. Nevertheless, on this basis it was duly considered and adjudicated by the parties and the trial court at the bench trial. Accordingly, I believe the claim is properly before us now. However, if as the majority suggests, it was not properly before the trial court, then I do not believe it was appropriate for the trial court or this court to purport to render an opinion or ruling on the merits of that claim. Rather, that portion of the trial court's judgment should be vacated and the matter should be remanded for the opportunity to file a new or amended complaint for a proper adjudication of the issue.
[4] At the outset, it is not clear to me that the medical record of Wurzauf's injury and workers compensation benefits which conclusively establishes his inability to attend work, ever establishes his ability to attend the supplemental MIT program. In my view, even assuming the right of an employer to compel attendance in this program on penalty of losing one's job, establishing the employee's physical ability to participate in the program ought to be a minimum threshold requirement. Moreover, it seems to me that to remain consistent with theCoolidge decision, this ought to be established through the workers compensation system and not left to the employer to compel the employee to submit to the employer's independent medical determination. *Page 1